Peter Bibring (SBN 223981)
pbibring@aclusocal.org
Adrienna Wong (SBN 282026)
awong@aclusocal.org
ACLU FOUNDATION
OF SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

Novella Coleman (SBN 281632)
ncoleman@aclunc.org
Linda Lye (SBN 215584)
llye@aclunc.org
ACLU FOUNDATION
OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT MITCHELL, an individual, | CASE NO: 1:18-at-00069 |
| *Plaintiff*, | **COMPLAINT FOR DAMAGES** |
| v. | <u>JURY TRIAL REQUESTED</u> |
| RONNIE JEFFRIES, in his individual capacity; JOHN BISHOP, in his individual capacity; FNU SHERMAN, in his individual capacity; and CITY of BAKERSFIELD; | |
| *Defendants*. | |

1. This case arises from the Bakersfield Police Department's unlawful arrest of Robert Mitchell, a Black man. Mr. Mitchell was a passenger in a vehicle with three other Black people when Bakersfield Police Department officers pulled the vehicle over purportedly for trivial traffic violations. They then arrested Mr. Mitchell because he invoked his constitutional rights not to answer their questions during the course of a pretextual traffic stop and the ensuing unreasonably lengthy detention.

2. Ultimately, no criminal charges were filed against Mr. Mitchell. But the officers handcuffed him, forced him into the back of a patrol car, and separated him from his family to spend twelve hours in jail—all because he asserted his constitutional rights. Mr. Mitchell now seeks damages for the violations of his rights under the First and Fourth Amendments to the United States Constitution, the California Constitution, and state law.

## PARTIES

3. Plaintiff Robert Mitchell is a resident of the City of Bakersfield.

4. Defendants Ronnie Jeffries and John Bishop are officers of the Bakersfield Police Department. At all relevant times, they were acting under color of law within the course and scope of their duties as Bakersfield Police Department officers, and as agents and employees of the City of Bakersfield.

5. Defendant FNU ("First Name Unknown") Sherman is a Sergeant of the Bakersfield Police Department and Defendant Jeffries' and Bishop's supervising officer. His badge number is #926. At all relevant times, he was acting under color of law within the course and scope of his duties as a Bakersfield Police Department officer, and as an agent and employee of the City of Bakersfield. Sergeant Sherman's first name is not currently known to Plaintiff; Plaintiff intends to amend the complaint upon learning his first name.

6. The City of Bakersfield ("City") is a political subdivision organized under the laws of California and a proper defendant in this action as to Mr.

Mitchell's claims made pursuant to the California Tort Claims Act, Cal. Gov't Code §§ 810-996. The City was at all relevant times the employer of Defendants Jeffries, Bishop, and Sherman. It is liable for the tortious actions and omissions of its employees. The Bakersfield Police Department is a department of the City. On information and belief, the City, through the Bakersfield Police Department, maintains an unlawful policy, custom, or practice of requiring individuals detained by police to identify themselves and arresting individuals who decline to answer questions about their identity. This unlawful policy, custom, or practice is reinforced by the Bakersfield Police Department's supervision and, on information and belief, its training.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over Mr. Mitchell's claims under the U.S. Constitution, 42 U.S.C. § 1983, 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343 (civil rights). The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

8. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2) because the acts and omissions at issue in this lawsuit occurred within the District.

9. Intradistrict venue is proper because this action arises out of Kern County. E.D. Cal. R. 120(d).

10. On July 20, 2017, Mr. Mitchell timely filed an administrative tort claim with the City of Bakersfield. The City issued a notice rejecting his claims on July 28, 2017. Mr. Mitchell has exhausted all available administrative remedies. Cal. Gov't. Code §§ 913, 945.6(a)(1).

## STATEMENT OF FACTS

11. On March 17, 2017, Bakersfield Police Department Officers Ronnie Jeffries and John Bishop stopped a car for the purported purpose of enforcing the Vehicle Code, for the stated reasons that they saw air fresheners hanging from the

car's rearview mirror, the tires were bald, and the car came to a rest in the turn lane with its wheels touching the dividing line. Plaintiff Robert Mitchell was a passenger in that car.

12. The trivial reasons cited by the officers were not real or valid reasons to stop the vehicle. For example, California law does not prohibit air fresheners hanging from a car's rearview mirror, Cal. Vehicle Code § 26708(b)(1); *People v. White*, 107 Cal.App.4th 636 (2003) (stop based on air freshener hanging from rearview mirror was not supported by reasonable suspicion), and the car's tire tread was neither inadequate nor, on information and belief, visible to the officers from their patrol car.

13. On information and belief, the officers actually stopped the car with the intention of detaining the car's occupants—all of whom were Black—to investigate them without reasonable suspicion or probable cause. In other words, the stop was a racially discriminatory pretextual stop.

14. Upon approaching the stopped car, the officers asked all of its occupants to identify themselves. The officers began questioning not only the driver, but also the three passengers. Their questions were not related to a hanging air freshener or any of the other trivial traffic violations they could have observed from outside the car. For example, they interrogated one passenger about whether he had ever been arrested, and about his family relations.

15. When the officers began to question Mr. Mitchell about his identity, he asserted that he was invoking his Fourth and Fifth Amendment rights and would not answer their questions.

16. Both officers argued with Mr. Mitchell about his legal rights, asserting that he was required to answer their questions about his identity. One officer stated that because Mr. Mitchell was a passenger in a stopped vehicle, he was detained and therefore required to identify himself. On information and belief, the two officers' consistent statements described and enforced the policy, custom,

or practice of the Bakersfield Police Department.

17. Mr. Mitchell expressed his disagreement, noting that he was not suspected of a crime. In response the officers did not articulate any basis for suspecting him of a crime; they did not indicate that they suspected him of a crime at all.

18. Mr. Mitchell filmed the interaction with the police during the stop on his cell phone. On information and belief, the officers prolonged and intensified their detention of Mr. Mitchell both because he was filming, and because he invoked his right to decline to answer their questions.

19. Under pressure, Mr. Mitchell provided his first name in response to the officers' demand that he state his name. But the officers were not satisfied with this response and pressed further.

20. Meanwhile, the officers discovered that the driver of the car did not have a license. He had taken over driving for the owner of the car, who did have a license, because she was pregnant and had been feeling ill.

21. At that moment, the officers could have issued the driver a citation and allowed the licensed owner of the car to drive her car home. (Indeed, that is what the officers ultimately did.) But instead, the officers prolonged the traffic stop in order to pursue their suspicionless investigation of the car's other passengers—specifically, Mr. Mitchell.

22. To coerce Mr. Mitchell into answering their questions to their satisfaction, the officers threatened to impound the car. When the driver and the owner of the car offered to switch seats instead, one of the officers stated: "We would appreciate it if everyone in the car would cooperate."

23. The car's passengers understood what the officer intended to communicate: that the police would impound the car unless Mr. Mitchell answered the officers' questions. Accordingly, the pregnant owner of the car began to plead with Mr. Mitchell to answer the officers. Faced with the officers'

1  threat, Mr. Mitchell told them his full name.

2      24.    Mr. Mitchell asked to speak with a supervising officer.  One of the officers agreed to call one.  That supervising officer was Sergeant Sherman.

3      25.    When Sergeant Sherman arrived, he told Mr. Mitchell that he had two choices: give the officers the information they requested, or go to jail.  Sergeant Sherman thus set forth the Bakersfield Police Department's policy, custom, or practice of arresting people who decline to answer their questions during an investigatory stop.  Mr. Mitchell responded that he had already told the officers his full name.  In response, Sergeant Sherman said, "Well then why do you need me?"

4      26.    Nevertheless, the officers ordered Mr. Mitchell to exit the car.  Mr. Mitchell peacefully complied.  Immediately, one of the officers grabbed Mr. Mitchell by the wrist, twisted his arm behind his back, grabbed the phone out of his hand, and handcuffed him.  With the authorization and approval of Sergeant Sherman, Officers Jeffries and Bishop placed Mr. Mitchell under arrest.  Based on the officers' sudden use of physical force, their prior threats, and the fact that they carried sidearms, Mr. Mitchell reasonably believed that they would subject him to violence unless he submitted to the arrest.  One of the officers informed Mr. Mitchell that he was under arrest for "hindering an investigation."

5      27.    The officers transported Mr. Mitchell to the Kern County Central Receiving Facility, where he was jailed overnight for approximately twelve hours before he was released.

6      28.    Mr. Mitchell was given a Notice to Appear, which charged him with obstructing or resisting an officer in violation of California Penal Code § 148(a)(1).  In the end, however, no criminal charges were filed in court against him.

7      29.    Mr. Mitchell's phone was not returned to him upon his release.  Instead, he had to go to the Bakersfield Police Department to demand its return.

As a result, he lost the use of his phone for several days.

30. Defendants thus harmed Mr. Mitchell: they violated and chilled his exercise and enjoyment of core constitutional rights; humiliated him; deprived him of the use of property he used to exercise his First Amendment rights; and caused the loss of his liberty, stealing from him valuable time he could have spent with his family.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Fourth Amendment (42 U.S.C. § 1983)

(Against Defendants Jeffries, Bishop, Sherman, and City of Bakersfield)

31. The foregoing allegations are realleged and incorporated herein.

32. Defendants Jeffries and Bishop violated Mr. Mitchell's Fourth Amendment rights by subjecting him to an unreasonable seizure in the car. They unreasonably seized and detained Mr. Mitchell without reason to suspect he was involved in a crime and escalated his detention beyond the permissible scope of an investigatory stop without probable cause.

33. Defendants Jeffries and Bishop also violated Mr. Mitchell's Fourth Amendment rights by arresting him and causing him to be jailed without a warrant or probable cause to support his arrest. They relied on an invalid basis—Mr. Mitchell's initial refusal to answer questions about his identity—to arrest him for violation of California Penal Code § 148(a)(1).

34. Defendant Sherman directed, approved, and authorized Mr. Mitchell's unconstitutional arrest; he knowingly failed to prevent Defendant Jeffries and Bishop from violating Mr. Mitchell's Fourth Amendment rights; his audible admonition to Mr. Mitchell to "give his information to the officers or go to jail" and his directions to Defendants Jeffries and Bishop caused Mr. Mitchell's unlawful arrest; and he knowingly disregarded the fact that Mr. Mitchell's arrest and subsequent incarceration would be the obvious consequences of his actions

6
COMPLAINT FOR DAMAGES

and omissions.

35. Defendant City, through the Bakersfield Police Department, maintains a policy, custom, or practice of requiring individuals they detain to answer questions about their identity, even when they are detained absent reasonable suspicion, and of arresting such individuals for violation of California Penal Code § 148(a)(1) when they decline to identify themselves to the satisfaction of police officers.  Defendants Jeffries, Bishop, and Sherman acted pursuant to the Bakersfield Police Department's unlawful policy, custom, or practice when they unreasonably detained Mr. Mitchell and arrested him for violation of California Penal Code § 148(a)(1).

## SECOND CLAIM FOR RELIEF

### First Amendment (42 U.S.C. § 1983)

(Against Defendants Jeffries, Bishop, and Sherman)

36. The foregoing allegations are realleged and incorporated herein.

37. Defendants Jeffries and Bishop unlawfully retaliated against Mr. Mitchell for exercising his First Amendment right to speak.  Defendants Jeffries and Bishop unreasonably prolonged and intensified Mr. Mitchell's detention, arrested him, and caused him to be jailed to retaliate against him for verbally expressing disagreement with them about their interpretations of the law and facts, including whether he had a right to remain silent in the face of their questions about his identity.

38. Under the First Amendment, Mr. Mitchell had a right to film the officers in the course of their official duties. Defendants Jeffries and Bishop unreasonably prolonged and intensified Mr. Mitchell's detention, arrested him, and caused him to be jailed to interfere with and retaliate against his exercise of his right to film their conduct during the vehicle stop.

## THIRD CLAIM FOR RELIEF

**False Arrest / False Imprisonment / Violation of Cal. Const. Art I, section 13**

**(California Tort Claims Act, Cal. Gov't Code §§ 815.2, 820)**

**(Cal. Const. Art. I, section 13)**

(Against All Defendants)

39.   The foregoing allegations are realleged and incorporated herein.

40.   Defendant City, through Defendants Jeffries, Bishop, and Sherman, inflicted personal injury on Mr. Mitchell by subjecting him to false arrest and imprisonment and unreasonable seizure.

41.   Defendants arrested Mr. Mitchell for violating California Penal Code § 148(a)(1), based on his initial refusal to provide his full name. Defendants Jeffries and Bishop deprived Mr. Mitchell of his freedom by subjecting him to an unreasonable detention, and by arresting him without a warrant and without reasonable or probable cause, all without his consent. Defendant Sherman directed, approved, and authorized Defendants Jeffries and Bishop's actions causing Mr. Mitchell's false arrest and imprisonment and unreasonable seizure.

## FOURTH CLAIM FOR RELIEF

**Bane Act (Cal Civ. Code § 52.1)**

**(California Tort Claims Act, Cal. Gov't Code §§ 815.2, 820)**

(Against All Defendants)

42.   The foregoing allegations are realleged and incorporated herein.

43.   Defendant City, through Defendants Jeffries, Bishop, and Sherman, interfered with Mr. Mitchell's exercise and enjoyment of his rights under the United States and California Constitutions.

44.   Defendants intentionally interfered with Mr. Mitchell's rights under the Fourth Amendment and Article I, Sections 10 and 13 of the California Constitution to be free from unreasonably invasive or prolonged investigatory detention in the absence of reasonable cause.  Defendants used threats and coercion to prevent Mr. Mitchell from insisting on his rights, and they ultimately

did arrest him and caused him to be jailed to retaliate against him for invoking his rights.

45. Defendants intentionally interfered with Mr. Mitchell's right to remain silent under the Fifth Amendment and Article I, Section 15 of the California Constitution. Defendants made threats to prevent Mr. Mitchell from exercising that right, and they subjected him to an unreasonably invasive and prolonged investigatory detention, arrest, and jail to retaliate against him for invoking that right.

46. Defendants intentionally interfered with Mr. Mitchell's right under the First Amendment and Article I, Section 2 of the California Constitution to verbally assert his constitutional rights. Defendants used threats and coercion to prevent Mr. Mitchell from insisting on that right, and ultimately did arrest him and cause him to be jailed to retaliate against him for expressing verbal disagreement with their interpretations of the law and facts and for verbally asserting his rights.

47. Defendants intentionally interfered with Mr. Mitchell's rights under the First Amendment and Article I, Section 2 of the California Constitution to video record police officers engaged in their official duties. Defendants subjected Mr. Mitchell to an unreasonably invasive and prolonged investigatory detention, arrest, and jail to retaliate against him for exercising that right. Defendants arrested Mr. Mitchell, forcefully confiscated his cell phone, and failed to return the phone to him upon his release from jail to prevent him from exercising that right and to retaliate against him for exercising that right.

48. Defendants intentionally interfered with Mr. Mitchell's right under the Fourth Amendment and Article I, Section 13 of the California Constitution to be free from warrantless arrest without probable cause. Defendants used threats and force to effect Mr. Mitchell's unlawful arrest, and Mr. Mitchell reasonably believed that they would commit violence against him if he did not physically

submit to the unlawful arrest.

## PRAYER FOR RELIEF

Wherefore, Plaintiff requests relief as follows:

1. Award compensatory and punitive damages against all Defendants for the above violations of federal and state law;

2. Award compensatory damages against the City of Bakersfield under the California Tort Claims Act;

3. Award prejudgment interest on any award of damages to the extent permitted by law;

4. Issue declaratory and injunctive relief against the City of Bakersfield for the above violations of federal and state law;

5. Award reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, Cal. Gov't Code § 52.1(h), Cal. Code of Civ. Proc. § 1021.5, and any other applicable law; and

6. Grant such other relief as the Court may deem appropriate.

Respectfully submitted,

ACLU FOUNDATION OF SOUTHERN CALIFORNIA

DATED: January 26, 2017     By:  s/ *Adrienna Wong*
                                                ADRIENNA WONG

                                                Counsel for Plaintiff